**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN OVERSIGHT, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| | ) |
| | ) |
| v. | ) Case No. 24-cv-2789-PLF |
| | ) |
| | ) |
| U.S. ARMY, | ) |
| U.S. DEPARTMENT OF DEFENSE, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

**<u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION</u>**
**<u>FOR A PRELIMINARY INJUNCTION</u>**

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

ARGUMENT ........................................................................................................................... 5

    I.    THIS COURT HAS JURISDICTION TO GRANT THE REQUESTED
        RELIEF. ....................................................................................................................... 6

    II.    AMERICAN OVERSIGHT IS ENTITLED TO A PRELIMINARY
        INJUNCTION. ............................................................................................................ 7

        A.    American Oversight Is Likely to Succeed on the Merits. ............................ 7

        B.    American Oversight Will Be Irreparably Harmed Absent the
              Requested Relief. ....................................................................................... 9

        C.    The Requested Relief Will Not Burden Others' Interests. ....................... 15

        D.    The Public Interest Favors the Requested Relief. .................................... 16

CONCLUSION ...................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Aguilera v. FBI,*
   941 F. Supp. 144 (D.D.C. 1996)............................................................................... 14

*Al-Fayed v. CIA,*
   254 F.3d 300 (D.C. Cir. 2001).................................................................................... 7

*Am. Civil Liberties Union v. U.S. Dep't of Justice,*
   321 F. Supp. 2d 24 (D.D.C. 2004).............................................................................. 7

*Am. Oversight v. U.S. Dep't of State,*
   414 F. Supp. 3d 182 (D.D.C. 2019)..................................................................... 7, 14

*Citizens for Responsibility and Ethics in Wash. v. Fed. Election Comm'n,*
   711 F.3d 180 (D.C. Cir. 2013).................................................................................... 9

*Cleaver v. Kelley,*
   427 F. Supp. 80 (D.D.C. 1976)................................................................................ 14

*Ctr. to Prevent Handgun Violence v. U.S. Dep't of the Treasury,*
   49 F. Supp. 2d 3 (D.D.C. 1999)............................................................................... 17

*EPIC v. U.S. Dep't of Justice,*
   416 F. Supp. 2d 30 (D.D.C. 2006)..................................................................... 14, 16

*Dunlap v. Presidential Advisory Comm'n on Election Integrity,*
   286 F. Supp. 3d 96 (D.D.C. 2017)............................................................................ 14

*Elec. Frontier Found. v. Office of Dir. of Nat'l Intelligence,*
   2007 WL 4208311 (N.D. Cal. 2007)........................................................................ 15

*Jacksonville Port Auth. v. Adams,*
   556 F.2d 52 (D.C. Cir. 1977)................................................................................... 17

*Judicial Watch, Inc. v. U.S. Secret Serv.,*
   726 F.3d 208 (D.C. Cir. 2013)................................................................................. 13

*Leadership Conference on Civil Rights v. Gonzales,*
   404 F. Supp. 2d 246 (D.D.C. 2005)...................................................................... 8, 14

*Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.,*
   437 U.S. 214 (1978) ............................................................................................ 11, 17

*Oglesby v. Dep't of the Army,*
   920 F.2d 57 (D.C. Cir. 1990)..................................................................................... 6

*Payne Enters., Inc. v. United States,*
   837 F.2d 486 (D.C. Cir. 1988)............................................................................ 10, 14

*Protect Democracy Project, Inc. v. U.S. Dep't of,*
   263 F. Supp. 3d 293 (D.D.C. 2017).......................................................................... 15

*Rockwell Int'l Corp. v. U.S. Dep't of Justice,*
   235 F.3d 598 (D.C. Cir. 2001)................................................................................. 12

*Sai v. Transp. Sec. Admin.,*
   54 F. Supp. 3d 5 (D.D.C. 2014)............................................................................... 15

*Serono Labs., Inc. v. Shalala,*
   158 F.3d 1313 (D.C. Cir. 1998)................................................................................. 7

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989) ................................................................................ 17
*U.S. Dep't of Justice v. Tax Analysts*,
   492 U.S. 136 (1989) .................................................................................. 8
*Wash. Post v. Dep't of Homeland Sec.*,
   459 F. Supp. 2d 61 (D.D.C. 2006) ............................... 6, 10, 13–14, 17

**Statutes**

5 U.S.C. § 552 ........................................................................................*passim*

**Regulations**

32 C.F.R. § 286.8 ............................................................................................ 4

**Other Authorities**

H.R. Rep. No. 93-876 .............................................................................. 7, 14

*Media Policy for Army National Military Cemeteries*, Dep't of Army (Apr. 18, 2022),
   https://www.arlingtoncemetery.mil/Portals/0/ANC-media-policy.pdf ........................................ 5

## INTRODUCTION

On August 26, 2024, with a momentous presidential election just around the corner, former President Trump's campaign staff were reportedly involved in an incident at Arlington National Cemetery ("ANC"). According to media reports, when an ANC official attempted to prevent former campaign staffers from filming and photographing in a section of the Cemetery—political activity prohibited by law—an altercation ensued after the campaign had been informed of the rules. American Oversight seeks access to records that could shed light on this episode in advance of the impending general election, to ensure the public has as much information as possible on a matter of great public importance, so they can make informed decisions on election day. Responsive records will also help ensure prompt Congressional oversight on this matter, efforts which have reportedly been stymied to date.

To that end, within days of the incident, on August 30, 2024, American Oversight submitted a Freedom of Information Act ("FOIA") request to ANC seeking records with the potential to shed light on the events of August 26. Specifically, American Oversight requested any report, including an incident report, regarding the alleged incident. This request would capture records, to the extent they exist, about ANC's efforts to enforce and investigate any potential inappropriate political activity in a location where it is prohibited by law. Separately, Ranking Member of the House Committee on Oversight and Accountability Jamie Raskin has sought, but not yet received, the incident report resulting from the August 26 altercation.

Despite American Oversight's diligence in promptly submitting the FOIA request and a subsequent request for expedited processing, the clear statutory directive requiring a determination from Defendants, and the public interest involved, Defendants failed to respond to the organization's request to expedite and it has not received any records from ANC concerning this matter of extraordinary public importance. ANC's failure to meet its statutory obligations under

FOIA deprives American Oversight and the American public—as well as members of Congress who are investigating the incident on their behalf—of information regarding whether and to what extent unlawful political activity occurred at a national shrine to those who have honorably served the country. The need for prompt release of these records is particularly acute, as their value to the public will diminish after the election. American Oversight seeks immediate injunctive relief to protect its vital interests and those of the public it serves.

**Background**

On August 29, 2024, American Oversight submitted one FOIA request to ANC on the heels of public reporting that an incident had occurred between officials at Arlington National Cemetery and former President Trump's campaign staff. The request sought the following targeted category of records:

> Any report – including, but not limited to, an incident report filed with U.S. Army Military Police Corps officials and/or any other military officials at Arlington National Cemetery – regarding the alleged incident reported to have taken place during the August 26, 2024, visit by former President Trump to Arlington National Cemetery.[ ]
>
> Please provide all responsive records from August 26, 2024, through the date the search is conducted.

Am. Compl. ¶ 9, Ex. A. American Oversight emailed its request to the address listed on the FOIA page of ANC's website, FOIA@rmda.belvoir.army.mil. Decl. of Benjamin A. Sparks, Oct. 8, 2024, ¶¶ 5–8, Exs. A–D.

American Oversight sought these records to shed light on whether and to what extent there was an altercation between ANC staff and political campaign staff, including a videographer or photographer, and whether and to what extent that alleged altercation intersected with the enforcement of rules pertaining to political activity at Arlington National Cemetery. Obtaining the requested records and disseminating the information in those records is vital to fulfilling American

Oversight's core organizational mission to ensure transparency into government actions of public concern, promote accountability for government officials, and disseminate information about the government's actions to the public. American Oversight is a non-partisan, nonprofit organization primarily engaged in disseminating information to the public and committed to ensuring transparency in government and promoting accountability for government officials. Am. Compl. ¶ 5; Sparks Decl. ¶ 2. American Oversight posts the majority of records it receives in response to public records requests on its public-facing website. Sparks Decl. ¶ 3. American Oversight also analyzes the records it receives and creates explanatory and editorial content, and the organization highlights its findings for other media to ensure wide public dissemination. *Id.* American Oversight disseminates the information it receives in order to facilitate the informed participation of the American public in self-government, including by ensuring the public has the information it needs to make informed choices during elections and to effectively petition its representatives in Congress. *Id.* American Oversight intends to rapidly disseminate information from records it receives in response to these requests to the public. *Id.* ¶ 4.

After submitting its request on August 29, 2024, American Oversight received an email notice on August 30, 2024, that the submission to the email address listed on ANC's website was undeliverable. Am. Compl. ¶ 11; Am. Compl. Ex. D; Sparks Decl. ¶ 8, Ex. D. On August 30, 2024, American Oversight submitted its FOIA request again to the same email address, but this time copying what appeared to be the public affairs office email address (arlingtoncemetery.pao@army.mil). Am. Compl. ¶ 12; Am. Compl. Ex. E; Sparks Decl. ¶ 9, Ex. E. On August 31, 2024, American Oversight again received a notice that its email address to FOIA@rmda.belvoir.army.mil was undeliverable, but received no notification in response to its email to arlingtoncemetery.pao@army.mil, Am. Compl. ¶ 13; Am. Compl. Ex. F; Sparks Decl.

¶ 10, Ex. F, indicating that the submission to the latter email address had been successfully transmitted.

Having received no response two weeks later, on September 18, 2024, American Oversight emailed arlingtoncemetery.pao@army.mil requesting confirmation of receipt of its FOIA request. Am. Compl. ¶ 14; Am. Compl. Ex. G; Sparks Decl. ¶ 11, Ex. G. The Chief of Public Affairs responded the same day, stating that the office did not process FOIA requests, but instructed American Oversight to "[p]lease direct your FOIA request to Mr. Steven Dawson at steven.a.dawson3.civ@army.mil." Am. Compl. ¶ 14; Am. Compl. Ex. H; Sparks Decl. ¶ 12, Ex. H. American Oversight promptly emailed Mr. Dawson, summarizing its efforts to submit the request, and asked that the request be treated as received on August 29, 2024, and processed in an expedited fashion. Am. Compl. ¶ 15; Am. Compl. Ex. I; Sparks Decl. ¶ 13, Ex. I.

American Oversight emailed Mr. Dawson a second time on September 20, 2024, to confirm receipt of the FOIA request. Am. Compl. ¶ 16; Am. Compl. Ex. J; Sparks Decl. ¶ 14, Ex. J. Receiving no response, on September 23, 2024, American Oversight again emailed Mr. Dawson to confirm receipt. Am. Compl. ¶ 17; Am. Compl. Ex. K; Sparks Decl. ¶ 15, Ex. K. On September 25, 2024, American Oversight emailed a formal request to expedite its FOIA request, pursuant to 5 U.S.C. § 552(a)(6)(E)(1) and 32 C.F.R. § 286.8(e)(1)(i)(B). Am. Compl. ¶ 18; Am. Compl. Ex. L ("Request to Expedite"); Sparks Decl. ¶ 16, Ex. L. The same day, counsel for American Oversight spoke with Mr. Dawson by telephone and learned that the request would not be processed in 10 calendar days. Am. Compl. ¶ 19; Sparks Decl. ¶ 17. Mr. Dawson later that day emailed American Oversight, again suggesting that the FOIA request would not be fulfilled within 10 calendar days. Am. Compl. ¶ 20; Am. Compl. Ex. M; Sparks Decl. ¶ 18, Ex. M.

The records American Oversight has requested concern matters that may shed light on ANC's efforts to enforce its clear and longstanding prohibition on using the site as a political tool. This prohibition includes filming or photography "if it conveys the impression that cemetery officials or any visitor. . .  is endorsing any product, service or organization. . . . ANC will not authorize any filming for partisan, political, or fundraising purposes, in accordance with the Hatch Act . . . ." *Media Policy for Army National Military Cemeteries*, Dep't of Army (Apr. 18, 2022), https://www.arlingtoncemetery.mil/Portals/0/ANC-media-policy.pdf. In the meantime, Army is apparently resisting requests from several members of Congress for documents related to and including the incident report related to the incident. Letter from Jamie Raskin, Ranking Member, House Comm. on Oversight and Accountability, to Christine Wormuth, Sec'y of the Army (Aug. 30, 2024), https://www.politico.com/f/?id=00000191-a9d3-d503-af9f-b9ffc0bd0000.

Defendants have not produced any records responsive to American Oversight's request and have failed to make a final determination as to its expedited processing request. Am. Compl. ¶¶ 27, 31; Sparks Decl. ¶¶ 19–20. American Oversight accordingly seeks to compel Defendants to comply with the requirements of FOIA, and promptly produce all non-exempt portions of the records American Oversight has requested, which are urgently needed to inform the public in advance of the election—as well as, potentially, members of Congress—about whether and to what extent ANC attempted to enforce rules or uncovered information relating to any non-authorized and illegal political activity at Arlington National Cemetery.

## ARGUMENT

American Oversight is entitled to preliminary injunctive relief in this case, which involves lawful requests for public records with the potential to inform American Oversight and the public about matters of the greatest importance. The records American Oversight has lawfully requested concern the actions of Arlington National Cemetery officials during a former president's visit with

campaign staff. Given American Oversight's clear entitlement to the non-exempt portions of the requested records and its therefore near-certain likelihood of succeeding on the merits, the plainly urgent need to inform the public about the matters that are subjects of the records American Oversight has requested resulting in the prospect of irreparable harm if determination and subsequent release are delayed, and the likely benefit to the public and other FOIA requesters of relief here, American Oversight plainly meets the requirements for preliminary injunctive relief in this matter.

This Court is empowered to grant American Oversight's request that Defendants be ordered to comply with its statutory obligations in this matter of urgent national concern. American Oversight asks that this Court use that power to prevent irreparable harm to Plaintiff and the public it seeks to serve.

## I.   THIS COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF.

The FOIA statute provides jurisdiction for this Court to consider this matter and grant all necessary injunctive relief. It states:

> On complaint, the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo . . . .

5 U.S.C. § 552(a)(4)(B). When an agency fails to comply with the applicable time-limit provisions in the FOIA statute, a requester "shall be deemed to have exhausted his administrative remedies with respect to such request." *Id.* § 552(a)(6)(C)(i); *see also Oglesby v. Dep't of the Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) (holding that a requester may bring suit if an agency fails to comply with statutory time limits). This includes a failure to respond to a FOIA request within the statutorily imposed timeframe. *See Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 74 (D.D.C. 2006) ("failure to process FOIA requests in a timely fashion is 'tantamount to denial.'")

(quoting H.R. Rep. No. 93-876, at 6 (1974)). As to expedited processing, judicial review is immediately available upon failure to comply with the time-limits relevant to that statutory provision. 5 U.S.C. § 552(a)(6)(E)(iii); *see Am. Civil Liberties Union v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 29 (D.D.C. 2004) (lack of administrative appeal does not preclude judicial review of agency refusal to expedite). American Oversight has therefore exhausted all applicable administrative remedies, and its claims are ripe for adjudication.

## II.   AMERICAN OVERSIGHT IS ENTITLED TO A PRELIMINARY INJUNCTION.

In considering a plaintiff's request for injunctive relief, a court must weigh four factors: (1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury absent injunctive relief; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest. *Al-Fayed v. CIA*, 254 F.3d 300, 303 (D.C. Cir. 2001); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317–18 (D.C. Cir. 1998); *Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182, 185 (D.D.C. 2019). Consideration of these factors here demonstrates American Oversight's manifest entitlement to preliminary injunctive relief in this extraordinary case.

### A.  American Oversight Is Likely to Succeed on the Merits.

As a clear matter of established law, American Oversight is entitled to a prompt determination on its FOIA request and the timely processing and production of non-exempt responsive records. FOIA clearly and unambiguously provides that federal agencies must make records "promptly available to any person" who reasonably describes the records they seek in accordance with established procedures. 5 U.S.C. § 552(a)(3)(A); *see also id.* § 552(a)(6)(A)(i) (requiring a determination whether to comply with a FOIA request within 20 working days).

American Oversight is also entitled by law to expedited processing of its request. *Id.* § 552(a)(6)(E). Defendants have failed to meet these clear statutory obligations here.

As an initial matter, the records American Oversight seeks—any report regarding the incident alleged to have taken place during the August 26, 2024 visit by former President Trump to Arlington National Cemetery—undoubtedly fall within the statutory category of agency records that an agency must produce under FOIA. *See U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 146 (1989) (defining "agency records" as materials "create[d] or obtain[ed]" by the agency and within the agency's control at the time the request is made). In addition, the request reasonably describes the records sought (specifying a timeframe, subject matter, and category of record) and complied with all necessary procedures. *See* Am. Compl. ¶¶ 8–9. American Oversight is therefore more than likely to succeed in establishing its entitlement to the requested records.

American Oversight is also plainly entitled to expedited processing of its requests, as there is a compelling need for the information requested. 5 U.S.C. § 552(a)(6)(E)(v)(II). There is a self-evident "urgency to inform the public concerning" the federal government activities that are the subject of American Oversight's request in light of both the congressional and public interest in ANC's involvement and response to the incident and American Oversight's own mission to promote accountability in government through transparency. *Id.*; *see also Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005). And American Oversight is primarily engaged in disseminating information to the public. Am. Compl. ¶ 5; Sparks Decl. ¶¶2–3. Courts have found that expedited processing is warranted even in cases where the records requested were needed far less urgently and concerned matters less momentous than a federal agency's response to alleged unlawful political activity on federal property just over two months before the general election. *See Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260

(finding expedited processing warranted where records requested concerned legislation that was set to expire over a year from the time of the court's decision).

Despite the plainly urgent public need for the information contained in the records American Oversight has requested, Defendants have still failed to comply with their obligations to timely make a determination as to the scope of the records they intend to produce or withhold and the reasons for any withholdings. *See* 5 U.S.C. § 552(a)(6)(A)(i); *Citizens for Responsibility and Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 182–83 (D.C. Cir. 2013) ("[T]he agency must at least indicate within the relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents.").

American Oversight will ultimately prevail in demonstrating its entitlement to expedited processing of its FOIA requests, prompt determinations on the requests, and prompt disclosure of any non-exempt responsive records. FOIA provides clear statutory directives to agencies in responding to FOIA requests, and Defendants have violated them. In the meantime, American Oversight urgently needs Defendants to fulfill their clear statutory obligations. Congressional interest in the incident is high, and there is a significant public interest in understanding if any federal laws or Army regulations related to prohibited political activity were enforced by ANC staff during the August 26 visit, particularly in the run-up to the general election. American Oversight, and the public to whom American Oversight will disseminate information in the requested records, need the requested information promptly in order to make informed judgments about the alleged incident at Arlington National Cemetery.

### B. American Oversight Will Be Irreparably Harmed Absent the Requested Relief.

American Oversight will be harmed irreparably if Defendants do not grant expedited processing, promptly process American Oversight's FOIA request, make timely determinations on

9

those requests, and promptly produce non-exempt records. Only preliminary injunctive relief can address this urgent need and the specter of irretrievably losing American Oversight's rights under FOIA. As this Circuit has noted, "stale information is of little value." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).

Accelerated review by this Court can ensure that unchecked delays do not irrevocably deprive American Oversight of the prompt determinations regarding its request and the prompt disclosure of the non-exempt responsive records to which it is entitled under FOIA. As this Court has previously noted, "[t]o afford the plaintiff less than expedited judicial review would all but guarantee that the plaintiff would not receive expedited agency review of its FOIA request." *Wash. Post*, 459 F. Supp. 2d at 66. Further unlawful delay in processing the request will irreparably harm the ability of American Oversight—and the public—to receive the determinations and prompt production of materials it is entitled to by law in time to carry out its core mission by informing the public of matters of great importance that relate to conflicting stories about an incident alleged to have taken place at one of the country's most sacred grounds.

Losing the ability to gain prompt access to the non-exempt portions of the requested records would be particularly harmful to American Oversight, whose mission is to ensure public transparency into government actions, promote accountability for government officials, and disseminate information obtained on matters of public importance. Sparks Decl. ¶¶ 2–3, 22. American Oversight's entire purpose is to use government transparency to help it, and the public, monitor the activities of government officials and agencies. *Id.* ¶¶ 2–3, 21. Prompt determinations and timely production of non-exempt records will equip American Oversight to enhance the public debate on the merits of the alleged incident and the government's response to and investigation of the same. *Id.* ¶ 22. That public debate is particularly relevant in the lead-up to a pivotal election.

American Oversight would also use the information gained from the requested records, in accordance with the organization's core mission, to promote accountability for government officials who may have been involved in events leading up to, during, and after the alleged incident. *Id.* ¶¶ 21–22. Delay will deprive the public of information it needs to participate in these momentous issues in an informed manner. As time passes since the incident, the value of the requested information will greatly diminish. American Oversight and the public need the non-exempt information contained in the requested records promptly, as is required by the statute.

Our system of representative democracy depends upon an informed citizenry. That principle animates FOIA. *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."). American Oversight's work and mission embody that principle. American Oversight strives to provide the public with important information about the activities and operations of the federal government, including inappropriate or illegal actions undertaken by government officials. Sparks Decl. ¶¶ 2–3, 22. This case goes to the heart of American Oversight's mission because it involves an effort to provide the public with information regarding a matter of the most weighty public importance. The public can, in turn, use the information that American Oversight receives, analyzes, disseminates, and posts publicly to participate in robust public debate, before the election, about the actions ANC staff took in response to a political campaign's staff who reportedly attempted to break rules regarding partisan activities at one of the country's most hallowed grounds. Members of Congress may be influenced by constituents'

11

communications and the broad opinions of the general public about what happened during the incident at Arlington National Cemetery.[1]

Members of the public cannot reliably fulfill their roles at the voting booth or meaningfully participate in petitioning their elected representatives concerning oversight efforts without adequate information on which to base their opinions, and organizations like American Oversight cannot inform and participate in the public discourse about these critical matters without access to the requested information about government activities. In light of the impending election as well as interest by the House Committee on Oversight and Accountability to receive more information about the incident, there is an urgent need to inform the public—now—about what transpired at Arlington National Cemetery. American Oversight's request seeks specific records relating to the alleged August 26 physical altercation and ANC staff efforts to enforce rules prohibiting the improper presence of campaign photographers in a part of Arlington National Cemetery where their presence was explicitly disallowed. Am. Compl. ¶¶ 8–9.

If Defendants are allowed to drag their feet even further in processing American Oversight's request, without the public having the benefit of the insight contained in the responsive records, the public's ability to understand the contours of the incident and behavior of the campaign staff and responding government officials will have been irreparably harmed. So too will American

---

[1] This Court should not find that American Oversight is unlikely to suffer irreparable harm on the assumption that Congress will be able to effectively obtain and make public all records relevant to the incident. Ranking Member Raskin's August 30, 2024 letter to Army Secretary Christine Wormuth asking for a "full account," to the best of American Oversight's knowledge, has not yielded any records, over a month later. And even if Army does ultimately produce some of the requested records to Congress, Congress regularly receives documents from the executive branch on the condition that those documents not be shared broadly. *See, e.g.*, *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 604 (D.C. Cir. 2001) (noting documents were shared with congressional investigators only on express condition that they not be made public). The public's need for information may therefore not be satisfied by any subsequent production to Congress, should it even occur.

Oversight suffer irreparable harm to its interest in obtaining its statutorily-guaranteed access to these records and using those records in support of its government transparency and accountability mission in the present timeframe, when those records are most relevant.

This case is therefore similar to *Washington Post v. Department of Homeland Security*, in which the plaintiff sought visitor logs for the Vice President's office and residence, which the plaintiff asserted would "assist the public in the degree to which lobbyists and special interest representatives may have influenced policy decisions of the Bush administration." 459 F. Supp. 2d at 65 (internal quotation marks omitted). The plaintiff explained that "[w]ith the midterm elections looming, any delay in processing this request would deprive the public of its ability to make its views known in a timely fashion." *Id.* Issuing its opinion in October of 2006, this Court concluded that "[b]ecause the urgency with which the plaintiff makes its FOIA request is predicated on a matter of current national debate, due to the impending election, a likelihood for irreparable harm exists if the plaintiff's FOIA request does not receive expedited treatment." *Id.* at 75.[2] Here, too, American Oversight's request seeks records that are the subject of current national debate. With the upcoming general election less than one month away, the public deserves to enter the voting booth equipped with the full record of events of August 26, 2024, at Arlington National Cemetery.

American Oversight would suffer this irreparable harm through its inability to achieve its core mission of ensuring transparency and promoting accountability by informing the public, including the Members of Congress and congressional staff, about government activities—

---

[2] In subsequent, unrelated litigation, the D.C. Circuit held that White House visitor logs are not "agency records" for purposes of FOIA. *See Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 228–29 (D.C. Cir. 2013). However, nothing in that decision affects this Court's analysis regarding irreparable harm in *Washington Post v. Department of Homeland Security*, 459 F. Supp. 2d 61 (D.D.C. 2006).

particularly that have been identified as a matter of interest to members of the House Oversight Committee. Sparks Decl. ¶ 22.

By now it is almost axiomatic that "stale information is of little value." *Payne*, 837 F.2d at 494; *see also Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96, 110 (D.D.C. 2017) ("District courts in this circuit have recognized that, where an obligation to disclose exists, plaintiffs may suffer irreparable harm if they are denied access to information that is highly relevant to an ongoing public debate.") (citing *Wash. Post*, 459 F. Supp. 2d at 75; *EPIC v. U.S. Dep't of Justice*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006)). Thus, "failure to process FOIA requests in a timely fashion is 'tantamount to denial.'" *Wash. Post*, 459 F. Supp. 2d at 74 (quoting H.R. Rep. No. 93-876, at 6 (1974)). That is no doubt why courts in this jurisdiction have repeatedly issued preliminary injunctions in FOIA cases where the requester seeks information urgently needed to inform a pending or developing situation. *See, e.g.*, *id.* at 74–75 (finding irreparable harm where requested records could inform public opinion in advance of upcoming election); *Am. Oversight*, 414 F. Supp. 3d at 187 ("The likely irreparable harm to American Oversight also stems from the fact that, if non-exempt responsive records exist, the public may not otherwise have access to them."); *EPIC*, 416 F. Supp. 2d at 40–41 (finding irreparable harm where requested records related to "current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program"); *Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260 (finding urgency requirement for expedition satisfied based on "upcoming expiration of the special provisions of the Voting Rights Act in 2007"); *Aguilera v. FBI*, 941 F. Supp. 144, 151–52 (D.D.C. 1996) (finding irreparable harm where requested records related to prisoner's challenge to conviction while already serving prison sentence); *Cleaver v. Kelley*, 427 F. Supp. 80, 81–82 (D.D.C. 1976) (granting preliminary injunction for records needed for upcoming criminal trial);

*cf. Sai v. Transp. Sec. Admin.*, 54 F. Supp. 3d 5, 10–11 (D.D.C. 2014) (finding no irreparable harm because plaintiff offered no evidence that requested records would be of "vital public interest for an upcoming congressional election or congressional or agency decision-making process requiring public input" (internal citations and quotation marks omitted)).

The intense public and Congressional interest, moreover, clearly presents the type of "potential for irreparable harm" that courts find in FOIA cases where the documents sought by a requester concern "'ongoing public and congressional debates about issues of vital national importance [that] cannot be restarted or wound back.'" *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 301 (D.D.C. 2017) (Cooper, J.) (quoting *Elec. Frontier Found. v. Office of Dir. of Nat'l Intelligence*, 2007 WL 4208311, at *7 (N.D. Cal. 2007)).

As in many of the cases above, American Oversight's ability to inform the public about the federal government's actions in matters related to alleged actions taken by partisan campaign staff at a decidedly nonpartisan and somber event will be irreparably harmed if Defendants are not required to make timely determinations, promptly process American Oversight's FOIA request on an expedited basis and produce all non-exempt, responsive documents on an accelerated schedule. American Oversight seeks judicial intervention to ensure Defendants will comply with their obligations.

### C.  The Requested Relief Will Not Burden Others' Interests.

No other interests would be harmed by granting American Oversight its requested relief. Defendants cannot claim to be harmed by an order compelling them to comply with their statutory obligations. Nor would granting American Oversight's relief unduly burden other FOIA requesters. The FOIA statute recognizes that requests should be processed on an expedited basis when there is an urgent need to inform the public about an actual or alleged federal government activity. 5 U.S.C § 552(a)(6)(E)(v)(II). Compelling Defendants to make the statutorily required

determination and promptly process the requested records upon a showing that the requested information is urgently needed to inform the public is exactly what Congress contemplated in adding a provision providing for expedited processing. See *EPIC*, 416 F. Supp. 2d at 36–37 (explaining 1996 amendment adding expedited processing requirements to FOIA). Given the extraordinary importance of the records American Oversight has requested, and the public's time sensitive need for the information contained in those records, there can be little doubt that these requests are of the type Congress envisioned being processed ahead of other FOIA requests. An order from this Court that Defendants promptly process American Oversight's requests and provide all non-exempt responsive records on an accelerated schedule set by this Court would be entirely consistent with the policy enacted by Congress and will not harm the interests of the non-moving party or any other entity.

Moreover, American Oversight submitted this request to ANC more than 5 weeks ago and the statutory deadline for providing determinations or responses has already passed. To the extent Defendants argue that resources will have to be pulled away from processing the requests of other requestors, that is due to Defendants' failure to allocate sufficient resources and make necessary systematic changes to process FOIA requests in compliance with their statutory obligations. Additionally, many other FOIA requestors are seeking the records that American Oversight seeks, or a subset thereof. *See* Am. Compl. Ex. M (FOIA officer stating that they have "multiple, if not potentially hundreds of inquiries for this particular snap-shot-in-time"). Ordering Defendants to rapidly search for, process, and produce records responsive to American Oversight's request will likely actually *aid* many other FOIA requesters who have sought records on the vital subject matter of American Oversight's requests.

### D.  The Public Interest Favors the Requested Relief.

A preliminary injunction is indispensable to protect the public's right to government transparency and essential interest in being informed about whether and to what extent ANC staff responded to a political campaign's staff muscling their way into an area where partisan filming and photography was prohibited by law. Consequently, the requested relief clearly serves the public interest.

Courts in this jurisdiction have long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *accord Wash. Post*, 459 F. Supp. 2d at 76. The very existence of the Freedom of Information Act is rooted in the self-evident premise that transparency and disclosure are a public benefit in a participatory democracy. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772–73 (1989); *see also Ctr. to Prevent Handgun Violence v. U.S. Dep't of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999) (noting that "[t]here is public benefit in the release of information that adds to citizens' knowledge" of government activities).

But the public benefit of injunctive relief here extends far beyond the general public interest in transparency and faithful adherence to FOIA. Congress enacted FOIA to ensure that citizens are able to participate in public debate in an informed manner, and this interest grows with the gravity of public decisions at hand. *See Robbins Tire*, 437 U.S. at 242 ("The basic purpose of [the] FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."). Understanding the actions taken by ANC staff in response to a political campaign's conduct at Arlington National Cemetery, especially when an alleged physical altercation reportedly occurred *after* the campaign was informed of the rules, is of the utmost importance. American Oversight's FOIA request seeks

records that will shed light on this incident that will aid both Congress and the public to get to the bottom of it, better participate in ongoing public debate, and make informed decisions about the incident while they have the opportunity to do so.

It is essential that the public *and* Congress have as much relevant information as possible about the incident that occurred at Arlington National Cemetery. The public has a limited opportunity to make their voices heard, and they deserve information that could inform their voting decisions during the general election. Moreover, as the passage of time creates distance from the event, so too does the attention wane on the important issue of whether and to what extent improper political activity occurred at one of the Nation's most solemn sites, Arlington National Cemetery. A preliminary injunction ensuring timely processing and disclosure of records concerning what occurred during the incident is crucial to serving the public's interest.

## CONCLUSION

For the foregoing reasons, Plaintiff American Oversight respectfully requests that this Court grant a preliminary injunction requiring Defendants to make timely determinations on American Oversight's FOIA request and promptly process the request on an expedited basis and produce all non-exempt responsive records and an index justifying the withholding of any withheld records by October 25, 2024, or such other date as the Court deems appropriate.

Dated: October 8, 2024

Respectfully submitted,

*/s/ Benjamin A. Sparks*
Benjamin A. Sparks
D.C. Bar No. 90020649
Daniel Martinez
CA Bar No. 333347*
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 873-1741
ben.sparks@americanoversight.org

*Pro hac vice motion forthcoming. Member of the California Bar; practice in the District of Columbia under supervision of members of the D.C. Bar.*

*Counsel for Plaintiff*

19